**RECORD NO. 10-4057**

**IN THE**

# United States Court of Appeals

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM ROOSEVELT CLOUD,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE

**SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLANT WILLIAM ROOSEVELT CLOUD**

FELDMAN and FELDMAN
Attorneys at Law
626 Reckson Plaza
West Tower, Sixth Floor
Uniondale, New York 11556
(516) 522-2828
Reversalzz@aol.com

Arza Feldman
*of counsel*

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

POINT I:

UNDER THE CASE-BY-CASE APPROACH IN *UNITED STATES V. HALSTEAD*, 634 F.3D 270 (4TH CIR. 2011), APPELLANT'S MONEY LAUNDERING CONVICTIONS SHOULD BE REVERSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION:

THE MONEY LAUNDERING COUNTS SHOULD BE REVERSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITS PURSUANT TO FRAP 32(A)(7)(c) . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## CASES

*Garland v. Roy*, 615 F.3d 391, 401-02 (5th Cir. 2010) . . . . . 5

*United States v. Bueno*, 585 F.3d 847, 850 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 2359, 176 L. Ed. 2d 563 (2010) . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Bucci*, 582 F.3d 108, 123-24 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Demarest*, 570 F.3d 1232, 1241-42 (11th Cir.), *cert. denied*, 130 S. Ct. 421, 175 L. Ed. 2d 272 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Halstead*, 634 F.3d 270 (4th Cir. 2011) . . . . . 1

*United States v. Howard*, 309 Fed. Appx. 760 (4th Cir.), *cert. denied*, 130 S. Ct. 62, 175 L. Ed. 2d 46 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009) . . . 5

*United States v. Lee*, 558 F.3d 638, 642-43 (7th Cir. 2009) . . 5

*United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) . . . . . . . . . . . . . . . . . . . . . . 1-2

*United States v. Spencer*, 592 F.3d 866, 879 (8th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Thornburgh*, 2011 U.S. App. LEXIS 10875 * 22-23 (10th Cir. May 27, 2011) . . . . . . 3

*United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*United States v. Yusuf*, 536 F.3d 178, 186 n.12, 49 V.I. 1182 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES

18 U.S.C. § 1956(a)(1)(A)(I) . . . . . . . . . . . . . . . . . . . . . . . . 1-2

## POINT I

UNDER THE CASE-BY-CASE APPROACH IN *UNITED STATES V. HALSTEAD*, 634 F.3D 270 (4TH CIR. 2011), APPELLANT'S MONEY LAUNDERING CONVICTIONS SHOULD BE REVERSED.

By order dated May 19, 2011, this Court directed counsel to submit supplemental briefing on "[w]hether, in light of *United States v. Halstead*, 634 F.3d 270 (4th Cir. 2011), Appellant's convictions for bank fraud, mail fraud, wire fraud and false statements merge with his convictions for money laundering." On the facts of this case, they do.

### The Law Under *Santos*

Appellant, through predecessor appellate counsel, argued, in his main brief (Brief: 46-55), that, under *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008), the money laundering counts should be dismissed.

The federal money-laundering statute prohibits various activities involving criminal "proceeds." *See* 18 U.S.C. §

1956(a)(1)(A)(I).[1] Since "proceeds" was undefined, the Supreme Court attempted to provide some guidance in *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008). That case turned on the resolution of "proceeds" in the context of an illegal gambling operation.

In a divided 4-1-4 decision, the plurality and concurring opinions collectively held that, at least in the context of an illegal gambling operation, "proceeds" means "profits" rather than "gross receipts" for purposes of the money-laundering statute. *Id*.

---

1. The relevant money laundering statute, 18 U.S.C. § 1956(a)(1), provides: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . (A)(i) with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both."

In 2009, the statute was amended, so that "proceeds" is now defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). But because the alleged mortgage fraud conspiracy in the case sub judice occurred from 1999 to 2005, the old version of the money laundering statute applies.

at 514 (plurality opinion); *id*. at 528 & n.7 (Stevens, J. concurring in judgment).

The Court reasoned that, in order to avoid a "merger problem," the term "proceeds" in the money laundering statute must be construed to mean "net profits" when the proceeds are derived from an illegal gambling business.

Interpretations of *Santos*

*Santos* has caused sharp disagreement among the circuit courts of appeal. *United States v. Thornburgh*, 2011 U.S. App. LEXIS 10875 * 22-23 (10th Cir. May 27, 2011)("*Santos* has caused considerable disagreement and confusion among the circuit courts of appeal. As we observed in *Searles*, "[t]he only thing that is 'clear and obvious' about the 4-1-4 Santos decision is that it 'raises as many issues as it resolves for the lower courts.'" [*United States v.] Searles*, 2011 U.S. App. LEXIS 2852, 2011 WL 488750, at *2 (*quoting United States v. Brown*, 553 F.3d 768, 783 (5th Cir. 2008)).

The courts fall into three camps. One has found that, under *Santos*, the term "proceeds" means "net profits" only in the

context of an illegal gambling activity. *See United States v. Spencer*, 592 F.3d 866, 879 (8th Cir. 2010); *United States v. Howard*, 309 Fed. Appx. 760 (4th Cir.)(unpublished), *cert. denied*, 130 S. Ct. 62, 175 L. Ed. 2d 46 (2009); *United States v. Demarest*, 570 F.3d 1232, 1241-42 (11th Cir.), *cert. denied*, 130 S. Ct. 421, 175 L. Ed. 2d 272 (2009)(it was not plain error to limit *Santos* to illegal gambling cases); *United States v. Bueno*, 585 F.3d 847, 850 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 2359, 176 L. Ed. 2d 563 (2010) (same).

Another camp has noted that both the plurality and Justice Stevens were concerned that the same underlying transactions could support a violation of both the predicate offense and money laundering, which would create a "merger problem." These courts have, therefore, concluded that, whenever a predicate offense presents a merger problem, the term "proceeds" should be defined as "net profits." But when no merger problem exists, these courts theorize, the term "proceeds" should be defined as "gross receipts." *See United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009); *United States v. Lee*, 558 F.3d 638, 642-43 (7th

Cir. 2009); *United States v. Bucci*, 582 F.3d 108, 123-24 (1st Cir. 2009).

Finally, in the third camp, several courts of appeals have acknowledged the merger problem, but have noted that Justice Stevens relied on the absence of legislative history to conclude that proceeds from an illegal gambling business should mean net profits. These courts have found that "proceeds," as used in the money laundering statute, means "gross receipts," unless there is either a merger problem or the money laundering statute's legislative history indicates that the "net profits" definition is appropriate for the specific predicate offense. *See Garland v. Roy*, 615 F.3d 391, 401-02 (5th Cir. 2010)(courts must look to both the merger problem and legislative history); *United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009)(courts must look to both legislative history and merger, but noting that there is only a merger problem when it "leads to a radical increase in the statutory maximum sentence"); *United States v. Yusuf*, 536 F.3d 178, 186 n.12, 49 V.I. 1182 (3d Cir. 2008)(Justice Stevens'

concurrence rested on the narrow grounds that proceeds means net profits when there is no legislative history to the contrary).

The Fourth Circuit's Interpretation of *Santos*

Faced with three different interpretations of *Santos*, this Court, in *Halstead*, its first published on the issue, adopted a middle ground. It said

> we read *Santos* to hold that[,] when a merger problem arises in the context of money laundering and illegal gambling, the required solution is to define the proceeds of the illegal gambling business as its net profits. When, however, a merger problem arises in the context of money laundering and an illegal activity other than illegal gambling, because of Justice Stevens' opinion that would require addressing that situation on a case-by-case approach, we will leave further development of a solution to a future case that presents the problem.

*Halstead* has no Impact on Cloud

When analyzed under a case-by-case approach, the money laundering counts against Appellant cannot stand, because the facts in *Halstead* and those *sub judice* are dramatically different. In *Halstead*, this Court said:

> The money laundering statute of which Halstead was convicted criminalizes 'financial transactions' when, among other things, they involve the transfer of

> money that is the 'proceeds' of an illegal activity. *See* 18 U.S.C. § 1956(a), (h). Thus, when the illegal activity includes money transactions to pay for the costs of the illegal activity, a merger problem can occur if the government uses those transactions also to prosecute the defendant for money laundering. An individual cannot be convicted of money laundering for paying the 'essential expenses of operating' the underlying crime. *Santos*, 553 U.S. at 528 (Stevens, J., concurring). But when the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering, the merger problem recognized in *Santos* does not even arise. That is the case here. *Id*. at 279-80.

It is not, however, the case here. The government essentially charged Cloud with a scheme to defraud mortgage lenders. It claimed he committed money laundering by paying his expenses and his confederates (Joint Appendix: 2908). The government specifically predicated the money laundering counts on allegations that Cloud paid co-conspirators–a recruiter (Counts 28 and 30), two buyers (Counts 29, 32 and 33), and a person who had loaned him money for a downpayment (Count 31)–for performing their roles in sales that had already been completed.

On these facts, a *Santos* merger problem arises because the alleged illegal activity--the mortgage fraud--includes money transactions to pay for the costs of the alleged illegal activity.

But just as a bank robber who pays for a rented getaway car with stolen monies has not committed money laundering, because the car is a cost of "doing business," the alleged payments to the recruiters, buyers and a lender were all costs, or reimbursable expenses, of the mortgage business.

Cloud's alleged payment of such expenses cannot not be treated as separate, prosecutable offenses, under the money-laundering statute. This is because the term "proceeds" in the money laundering statute means "net profits." Were that not the case, and "proceeds" were defined as "gross receipts," all crimes that have "costs" would automatically be elevated to money laundering simply because certain monies received from the crime was used to pay expenses.

That would be improper, on the facts of this case, because the financial transactions of the predicate mortgage offense are no different than the transactions prosecuted as money laundering.

Indeed, the entire alleged mortgage fraud--from the filing of mortgage applications to the reimbursement of recruiters, buyers and lenders--are one continuing, indivisible transaction. Each element depends on the other for success. Simply put, it has the flavor of mortgage fraud, not money laundering.

*Halstead* does not change this calculus. There, the healthcare fraud charges focused on the billing of insurance companies, while the money laundering charge focused on the transfers of money between various entities.

The *Halstead* Court duly noted the convoluted path of the ill-gotten gains to underscore the separate nature of the money laundering charges. It wrote:

> after Priority One fraudulently obtained money from the healthcare providers, Halstead directed that the money be transferred from Priority One to West Virginia Medical Corporation, a company created to manage Priority One. He also directed that the money be further transferred from West Virginia Medical Corporation to Burns and himself, in his case through his company, Practice Systems. These transfers constituted the 'transactions' of money laundering.

Halstead's scheme, *ab initio*, required separate companies and bank accounts in order to commit the insurance fraud, which, in turn, necessarily required money laundering to finally obtain the ill-gotten gains.

After Priority One fraudulently obtained money from the healthcare providers, Halstead directed that the money be transferred from Priority One to West Virginia Medical Corporation, a company created to manage Priority One. He also directed that the money be further transferred from West Virginia Medical Corporation to himself and others, through his company, Practice Systems. It was *these* transfers which constituted the "transactions" of money laundering.

Here, in contrast, no such banking transfers occurred. Cloud was alleged to have done nothing more, and nothing less, than allegedly commit mortgage fraud. He did not create separate companies or separate bank accounts to launder any money from any lenders.

The government's claim, in its March 9, 2011 28-j letter, that a *Santos* merger problem "does not even arise" because the

"the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering" is incorrect.

Unlike *Halstead*, which turned on healthcare fraud charges for billing insurance companies, *and* money laundering charges, for transferring money between two entities, here, there was only one alleged scheme and one alleged entity.

Critically, the internal machinations of a singular, continuing, indivisible conspiracy, predicated in whole, on mortgage fraud, does not somehow transmute the crime into money laundering, simply because a defendant uses proceeds from one transaction to finance the next transaction, or otherwise makes good will, lulling or loan repayments. These are all costs of doing business–no different than the manager of an illegal lottery making payments to runners, collectors, and winners.

Indeed, just as the lottery manager is not guilty of money laundering simply because he uses proceeds from past players to pay new winners, Appellant is likewise not guilty of using the proceeds from past transactions to finance new transactions.

Whether paying a lottery winner or financing a new transaction, these are not profits, but, rather, necessary costs and, indeed, the very lifeblood of an ongoing business. Without them, the entity would go out of business.

Simply put, Appellant never engaged in money laundering.

## CONCLUSION

THE MONEY LAUNDERING COUNTS SHOULD BE REVERSED.

Dated: June 6, 2011
Uniondale, New York

*/s/ Arza Feldman*

Arza Feldman,
Steven A. Feldman
Feldman & Feldman

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

WILLIAM ROOSEVELT CLOUD,

*Appellant.*

---

REQUEST FOR ORAL ARGUMENT

On January 7, 2011, counsel moved to submit, but, now, in view of *United States v. Halstead*, counsel respectfully requests oral argument, should the Court so desire. Counsel respectfully requests that Steven A. Feldman be permitted to orally argue the case.

*/s/ Arza Feldman*
Arza Feldman

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

*v*.

WILLIAM ROOSEVELT CLOUD,

*Appellant.*

---

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITS PURSUANT TO FRAP 32(A)(7)(c)

I, Arza Feldman, hereby certify that, pursuant to Rule 32 of the Federal Rules of Appellate Procedure, that this supplementary brief does not exceed 20 pages.

*/s/ Arza Feldman*
Arza Feldman

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

WILLIAM ROOSEVELT CLOUD,

*Appellant.*

---

We affirm, under penalties of perjury, that, on June 6, 2011 we caused Lantagne Legal Printing to serve a copy of Appellant's supplemental brief by first class, United States mail, on Kurt W. Meyers, Assistant United States Attorney, 227 West Trade Street, Suite 1650, Charlotte, NC 28202 and on William Cloud, William R. H. Cloud, 20770-058, FCI - II, P.O. Box 1500, Butner, NC 27509.

*/s/ Arza Feldman*
Arza Feldman